May it please the court, Sidney Foster for the government. I'd like to reserve four minutes of time for rebuttal. Plaintiff in this case prevailed on a single claim of Title VII retaliation but was unsuccessful on all other claims asserted in this case. Those claims concerned events that spanned four years of plaintiff's employment and were asserted under legal theories ranging from the Family Medical Leave Act, Federal Tort Claims Act, and the Whistleblower Protection Act to Title VII's disparate impact and disparate treatment provisions. The district court nonetheless declined to reduce plaintiff's attorney's fees at all on account of her limited success, thereby making the government pay for all plaintiff's unsuccessful arguments asserted, for example, under the FMLA or her argument that she's entitled to punitive damages against the government. The trial court found that the services required for a successful claim were linked or inextricably related to the other claims. Is that determination by the trial court reviewable by us de novo or for abuse of discretion? That determination largely is reviewable for abuse of discretion to the extent that that determination turned on some legal conclusions, which one of those determinations did. Those legal conclusions are reviewable de novo. I'd like to step back and clarify what successful claims were here because that requires consideration of both the jury verdict and the plaintiff's subsequent findings of fact made in connection with the equitable remedies motion that plaintiff made. The jury found for plaintiff on one claim of retaliation, and the jury was asked in that claim whether or not the agency retaliated against plaintiff on one or more occasions, and there were nine different employment actions that were listed, the last two of which were the denial of plaintiff's 2006 FMLA request and then also her termination. All we know from that jury verdict is that the jury found that one or more of those actions was retaliatory. Subsequent to the jury verdict in connection with plaintiff's motion for equitable... The basis of Mrs. Lewis' claim was that all the job actions that were taken against her were fundamentally based on racial discrimination and her complaint about racial discrimination. If the scope of review is one of abuse of discretion, as I think it is, where does a trial judge go wrong under that standard of review? Was his decision that the relation existed illogical, implausible, or without evidence in the record from which inferences could be made? There are a couple of answers to that question, Your Honor. I mean, number one, it wasn't all claims of retaliation and discrimination. There was an FMLA claim that was front and center in this case. That concerned whether or not the agency's denial of plaintiff's FMLA leave request in 2006 violated the FMLA. The facts relevant to that case were whether or not the medical certification that plaintiff submitted met the standards under the statute and the regulations. That simply had no bearing, those facts. Wasn't the medical condition stress-related? That's right. And didn't the stress arise out of the treatment she received from the Air Force? That is certainly plaintiff's contention, but the fact remains that the question in that FMLA claim was simply whether the medical certification that plaintiff's doctor provided was adequate. Did it sufficiently specify the medical facts that were needed to explain to the agency why the actual leave was needed? That evidence had no bearing whatsoever on whether entirely separate acts that were alleged to be retaliatory were, A, adverse and, B, were taken in retaliation for prior EEO complaints. And this is where I think understanding the scope of plaintiff's success is the most important. Because of the district court's factual findings that were made in connection with the equitable remedies motion, there the district court found as a matter of fact that the termination was not retaliatory and that the denial of FMLA leave was not retaliatory. So those were not successful claims for the plaintiff. The successful claims concerned other events that were wholly separate from those. There were simply no facts that were relevant in that FMLA claim about the adequacy of the medical certification, whether plaintiff was given enough time to submit the medical certification. There were simply no facts there. But isn't there sort of a gestalt aspect to the Attorney's Fee Award looking at the overall nature of the amount of work done, the nature of the work done? So are we to say the court abused its discretion? And then the reality is the amount of that would probably be minuscule. The amount of what? Fees with respect to that, right? The amount of fees with respect to the FMLA claim was actually quite large. Between the FMLA claim asserted in district court and MSPB and also related claims asserted in MSPB, most of which we think were also unrelated, that was about $67,000. So it's not minuscule at all. There was simply no overlap. Abusive discretion is a high standard to be sure, but district courts can abuse that discretion. And here plaintiff can point to no overlap between the successful retaliation claim and the unsuccessful FMLA claim. We think it was an abuse of discretion for the district court to have awarded fees for those. I think also with respect to the disparate treatment and the disparate impact claims there, we have both legal factual error and abuse of discretion. I want to start with the disparate treatment claims because we had legal error committed there. In the disparate impact claims, I'd just like to note that district court didn't even address at all. So reversals warranted on that ground alone under cases like Sorenson and Thorne, the district court needs to exercise its discretion with respect to those claims. But going back to the disparate treatment claims, the district court found that there was a relationship because of three different kind of bases for a relationship. Two of them were flatly wrong, and one of them was based on legal error. The first one was that somehow that plaintiff's discrimination claim concerning the 2003 hiring decision, that the facts relevant to that were relevant to her retaliation claim, which of course was asserted for actions that were subsequent to that decision. And the question there was, of course, whether those subsequent actions were taken in retaliation for the prior complaint about the 2003 decision. Number one, the district court said that the facts for underlying the discrimination claim, the disparate treatment claim, were necessary to show protected activity, but that's simply not the case here. This was a participation clause case. All that was needed to show protected activity was that she filed an EEO complaint, so that was very easily satisfied. Second, and this is where we get to the legal error, is that the district court concluded that the disparate treatment claim concerning the 2003 hiring decision had some relationship with the retaliation claims that were successful because, the district court said, plaintiff needed to show for her retaliation claim that she had a reasonable belief that she had been discriminated against. That's not true as a matter of law, and it also was not true in this case as a matter of fact. Starting with the latter, if you look at the jury instructions here, and that's at ER 304 and 305, you'll see that, in fact, the jury was not asked to determine whether or not she had a reasonable belief that she had been discriminated against. To the contrary, on 304, it makes clear that the jury was told that the merits of her discrimination claim had absolutely no bearing on the retaliation claim. So that was wrong as a matter of fact. You could have qualified for that Federal Express commercial where the person talks 9,000 miles a minute. I know that you have a lot of information you want to give to us. My apologies, Your Honor. But it makes it difficult. We have a question which may reveal to you the trouble that we may be having with the argument you're making and give you an opportunity to persuade us to the contrary. My apologies, Your Honor. I'll slow down. But the legal error that was made with respect to that is that it's simply not required in a participation clause case like this, and that is a case where the protected activity was actually participation in the EEO process. And it's clear from the jury instructions that that's the kind of case that we had here on ER 304. In a participation clause case, there is no need to show that there's a reasonable belief that you were discriminated against. That's a requirement only for opposition clause cases. And this court had squarely held that in cases like Hashimoto and Saez. And so to the extent that the district court relied on that legal conclusion, that was legally erroneous, and reversal is warranted on that ground alone as well. In addition to the disparate treatment and the disparate impact claims and the FMLA claims that we've already addressed, I just want to note that the FTCA claims are also problematic in this case. As we noted, under the reasoning of the Federal Circuit in the Slugaki decision, it's especially imperative for this court to attempt to disaggregate work on those claims that didn't advance the successful retaliation claim because there is no waiver of sovereign immunity for fees under the FTCA. And here at the very minimum, the briefing on the motion to dismiss the FTCA claims as preempted by Title VII and the Civil Service Reform Act concern legal issues that really did not advance a plaintiff's case. As the Supreme Court's held in Hensley and as this court has explained in decisions like Schwartz and Cabrales, the question that's at the core of the Hensley analysis is whether work on unsuccessful claims can be deemed to have been expended in pursuit of the ultimate result achieved. That's a quotation from Hensley. It's simply inconceivable that all the work the plaintiff did in this case was work that was expended to achieve her success in the retaliation claim. I'd like to reserve the remainder of my time for rebuttal. May it please the court, counsel, Judge Hawkins, Judge McKeon, Judge Bea, and Ms. Baptiste, my name is Nicholas Kittleson. And for the past seven years, it's been my honor and privilege to be able to represent Janet Lewis. This whole case is about an African-American woman who decided that she was going to stand up against the United States Air Force to protect her right to equal employment opportunity. Is your client with you today? Yes, Your Honor. Do you want to introduce her? Oh, thank you. I didn't know if I was able to do that or not. Yes, Ms. Lewis, if you'd stand up, please. This is Janet Lewis. My name's Janet Lewis. We can't really see her. Why don't you invite her to stand up? She usually, often we have the clients sit here if they're, that's, yes. She can do that. Stop the time. Just start over. Thank you. Please excuse my misunderstanding of protocol here. That's no problem. Every court's a little different. Ms. Lewis stood up for her rights, and as a result, she suffered retaliation, which led to anxiety, depression, post-traumatic stress disorder, and eventually a heart attack. The jury found that the cause of her damages, $60,000 worth of medical damages, was a reasonable cost of what Ms. Lewis suffered in terms of her medical damages, and also another $40,000 for her suffering through all of this. But Ms. Lewis wasn't fighting for her medical bills. She just wanted her job. And I think the primary mistake that the district court made in this case was that it overlooked Albert Marley Paper Company versus Moody, and the requirement that the injured party is to be placed as near as may be in the situation he or she would have occupied. I take it you're talking about your cross-appeal now. Correct, Your Honor. Yes. If the wrong had not been committed, she should be in that same place, and today she still is not employed back in her position. She still works for the Anchorage School District, and that's due to the denial of the equitable remedies. I take it at some point in your argument you'll get to a response to the attorney fee argument made by your opponent. Yes. You don't have to now. Okay. But I have a question that relates to this. Please, Your Honor. And that is, among the questions that were asked of the jury, the special verdict forms, special interrogatories to the jury, if you will, was the jury specifically asked whether the failure to grant leave was bound up in the stress that was produced by the retaliation claim? Not specifically. So no specific question was asked of the jury in that regard? That's correct, Your Honor. Do you concede this would be a different and, from your client's point of view, a stronger case if that had been asked? I believe so. And answered in a way helpful to her? Absolutely, and helpful to the district court. And so that's why when I originally submitted my jury instructions, I asked, you know, why don't we just have the jury make these findings? But, you know, in our discussions with the judge, some of those aren't even on the record, but, you know, we'd all go into his chambers and we would, you know, discuss. The hazard, which we always tell district judges and counsel everything should be on the record because we have no way to assess that. And we don't have a challenge here to failure to give a certain form of a verdict, do we? No, and I still think that given the verdict that we received, we still know that there, and even, you know, the defense counsel has actually conceded that there's no way that we can get to $60,000 in medical damages if we don't include, you know, the jury's understanding that the retaliation caused the heart attack. And there was the doctor's testimony to that. Correct. All of the doctors. In fact, there wasn't a single doctor that disputed the fact that all of these symptoms that Ms. Lewis was experiencing weren't related to the retaliation or the treatment that she was receiving. How do you respond, though? I guess the government's argument is you've got a list of nine things. So they'd say, well, how about assigning her extra work? Maybe, how do we know that wasn't the straw that broke the camel's back, so to speak? I think that's their argument. It could be any one of these other things. Right. Absolutely. And we could do that. I mean, let's, for instance, let's concede that argument for the sake of understanding how that would still require the court to award equitable remedies. The impact, and let's just say it was that one thing. Let's just say it was more work. That was the only thing. That still caused all of Ms. Lewis's symptoms, as the jury found. And so she would have still been in that same boat with the FMLA, still needing that time off, even if that was the only thing that caused it. One of the things that I found most helpful. Oh, Judge B, you had a question. One of the things that I found really helpful, in fact, I feel kind of embarrassed that it was the defense that found this case and not me, is there was a case cited in their last brief. It was the funny Indian name. It was an Asian or Indian name. Chopra. It was the Chopra case. On a very short list of common East Indian names, it would be hard to find one less common than Chopra. Chopra? It's a very common name. It's not a funny name at all. Oh, I'm sorry, did I? That's what you said. Oh, I apologize, Your Honor. I shouldn't have said that. But in the Chopra case, Chopra quoted two different cases that said that if the reason why the person was terminated, which could be a legitimate reason, was fueled by the illegitimate activity, and it gave the example, I believe, of race discrimination, that if the record that was being created to show that this person needed disciplinary action was infused with racial bias, then even if it would have been legitimate to terminate this person based on the disciplinary action, if it was infused with that racial bias, then it can't be used to overcome this requirement. Let me ask a question. I hope we'll wrap these two things together. Sure. Isn't it entirely reasonable, based upon the whole record in this case, for the court to have concluded, A, that for the purposes of attorney's fees and collections, since there was recovery on but one count, that this is a stream of the same events all related to each other, and therefore it was reasonable for Ms. Lewis's counsel, you, to undertake the work that you claimed that the district court largely compensated you for? I believe that was what the point was. Point one. Yes. Point two, in the absence of a specific determination by the jury that the denial of leave based on stress, et cetera, that the denial of leave, or the termination, rather, might have been based on the medical condition and the denial of leave, on the one hand, as opposed to some statements she may have made herself or other regions that would have allowed the proper termination? Isn't it possible to see those two things in contrast and say, determination one is perfectly logical, especially given abuse of discretion, as is reason two? Help me with that. And, yeah, to kind of extend the analysis, I think you're correct, because abuse of discretion is still there even for what I still have to show that it's an abuse of discretion. In the short term, I've probably talked too long, but tell me why your position, I take it, is that the district court was perfectly reasonable, well within its discretion to conclude as it did on attorney's fees, because of the relation between all of these things. Okay? I agree. Then why wasn't it reasonable for the court, in terms of the equitable relief you sought, to say I can't determine from this record exactly why she was terminated, and there may have been a good and sufficient reason for it, quite apart from the damages she may be entitled to, so I'm not going to exercise my discretion to entertain an equitable remedy. Tell me what's wrong with that. Okay. Yeah, and if I understand you correctly, both of them are on the abuse of discretion standard, so he's perfectly able to exercise his discretion on the attorney's fees, as long as it's not irrational, as we talked about earlier. But he's also free to discuss the way that he saw the evidence in this case, and make a determination that's based on his evaluation of the evidence, based on discretion. And the difference that I see is that in the latter, he's still bound by Alvin Marley, that he still has to make Ms. Lewis whole and put her back into the position that she would have been. Didn't he make a determination under Rule 49.83 that she was not terminated account retaliation? Right, and that's why I'm making a constitutional argument, because that seems to fly in the face of what the jury was. The jury could have found, under the instructions given, that the reasons for the retaliation were reasons one through eight. Okay. Yeah, I'm assuming. And if that were so, then her termination was not because of retaliation, and therefore to put her back in the position she was in, she wouldn't have to be rehired, because termination was not the retaliatory ground. But the question is, then, what was the reason she was terminated? One through eight. No, she was terminated because she took undocumented leave. If she asked for FMLA leave, it was denied, but she still took the leave. She didn't show up. I mean, the argument, I'm not saying whether it was true or not, but the argument is that her absence is caused. Then why was she asking for FMLA leave, though? It was the retaliation, is that she had been so hurt, the anxiety, the post-traumatic stress disorder, the heart attack, we cannot deny that those flowed from. I still have the same question. In the absence of a specific finding by the jury that retaliation, in fact, was the reason she was denied leave, what are we supposed to do? The case, please don't let me blank right now. I'll come back to the case name in just a second, but it says that when we follow the Seventh Amendment, we have to follow both the explicit and implicit determinations of the jury. So sometimes the jury, the decision isn't clear about why they reached the decision that they did, but we still have to follow the implicit findings of fact that flowed from that decision. I think there was one doctor in particular, Twombly, is that his name? Twombly, yes. Twombly actually said the heart attack and the termination were linked. Yes. He testified. I don't know, maybe there's other testimony, but there definitely is clear testimony on one doctor, cause and effect, and there's no countervailing. So in other words, there's nothing else to disbelieve that. That's correct. So I guess what you're saying is that if you look at the testimony and you look at the $60,000, you couldn't really have gotten there, either with having all of them or at least having the major termination or FMLA. Exactly. So if it's only, if it's the use of the judge not to really look at the practical realities of the jury verdict, in order to qualify for these equitable remedies, do you need, are you arguing that it was the termination that's linked to the damages, or the FMLA, or both, and does it matter? The last, it doesn't matter. Any way we look at this, Ms. Lewis ended up where she was because of the retaliation. And if we were to send it back, you would ask for reinstatement and back pay, but that reinstatement, for example, is discretionary with the judge, correct? Right. I mean, for example, he could, I mean, we've got to put her in the position that she would have been had this not occurred. And my argument is, you know, there are four years that she would have had opportunities towards promotions and that sort of a thing. The judge might say, well, you know, I'm just going to put her back in running one of the centers, even though some of these people are occupying positions right now that could be removed, that she could easily be put in. We can fix this situation by holding accountable the people who did this to her, and then she would have several different positions that the judge could put her in. And that is discretionary. Let me ask about the attorney's fees, a couple of specific legal issues. Number one, federal tort claims, lots of legal work associated with whether something is in or out. Counsel very quickly pointed to that as being an area that had nothing to do with anything else. What's your response on that? In my brief, I explained to the judge, and he accepted the facts that the very same types of behaviors that were used for my federal tort claims act were the same behaviors like, for instance, defamation was the same thing of telling lies about her in order to run her evals down. It was the same behaviors. It was just I was giving different legal theories that we could pursue those, and I was allowed to do the tort claims until they did the Westfall Act certification, which basically saved us time and money because that way we don't have to argue agency at all. We have a document certifying that everything that they did, the government is taking responsibility for. So, I mean, even though we lose FTCA, great, we get easy collection procedure.  There may be others, but the other one that she pointed out was you don't need to actually prove discrimination if your initiation of the process led to the retaliation. And so her point was that is kind of mutually exclusive. I mean, you might have both, but you don't need to. And I hate to do this, but Ms. Foster is absolutely right. I was wrong. I mean, I was absolutely wrong when I was briefing this. And the reason why it's in there is my fault. It's not Judge Sedgwick's fault. It's because I misunderstood the point that she made. She wins the battle, but the government does not win the war here because we have to take a look that item number six states facts used to support her claim that Donnelly discriminated against her were used to establish her protected activity, to reasonably believe that she had been discriminated against, and three, to show that her selectors retaliated against her by taking adverse employment actions. So even if we say, yes, the government, you win this one, she did not need to show a reasonable belief. It wasn't wrong for her to show a reasonable belief, but she didn't need to. It wasn't an element. Judge Sedgwick still based his decision on two other reasons that haven't been attacked. I mean, it's still a reasonable decision for him to make. And the second argument on that is I wasn't even her attorney when it was just that case. Well, that doesn't help her, unfortunately. Yeah, she didn't pay me any money, and I haven't billed her. I understand. Okay. I think we have that argument. Are there other questions? No. Thank you very much. All right. Thank you, Your Honors. Your Honors, I'd like to address a few issues relating to the equitable remedies and then go back to attorney's fees. First, I wanted to correct something that I think you said, Judge McEwen, regarding Dr. Trompley's testimony. There was testimony by Dr. Trompley that, in his view, receipt of the termination letter caused the heart attack. But I don't think that's true that there was no countervailing testimony. On cross-examination, he was asked if he had done a cardiac workup on the patient, if he regularly reads cardiology literature, and he admitted that he did not. Cardiologist, who is up-to-date on these, said that it's actually inconclusive as to whether or not stress can cause, you know, this kind of health condition. Moreover, there's evidence in the record, other evidence in the record, from which the jury could have concluded that pre-termination events were connected to the heart attack. Number one, there was more testimony by Dr. Trompley himself that, you know, three years of stress, workplace stress, could increase your chances of a heart attack. And that was at GSER 5253. How would that help if the stress ultimately ends up, you know, it's kind of the last straw kind of situation? I mean, it's all cumulative. I don't think it necessarily needs to be a last straw analysis, though it could be. I'm not sure how it helps your case to say, well, actually a lot of the stress came from these other problems, or potentially did. Well, the plaintiff's argument was that the fact that she was awarded medical damages means that the jury must have found that the termination was retaliatory because the only event that could have had a causal relationship with the heart attack was the termination. And so we're putting this evidence to show that the jury actually could have concluded that certain pre-termination events were connected to the heart attack, and therefore the jury could have concluded that, you know, the termination was not retaliatory, that we just can't tell from the jury verdict unless that the district court was authorized. The district court is looking at the evidence. And if, in fact, each of these things figures in and there's reasonable evidence to support it, why wouldn't that be the reasonable conclusion? I mean, in other words, it's not just the termination, but it's everything. It's a whole ball of wax rolled into one. Well, the question that was before the district court, as this court has explained in its Roberts decision, is whether it's possible to tell from the jury verdict and what the basis for its conclusion was, or to put it differently using the Hussain formulation that this court formulated. The question is, you know, did the jury necessarily conclude that the termination was retaliatory? And here there's just no way to figure out what was the basis for the jury's determination, and thus the district court properly moved on under Rule 49A.3 to make its own factual finding, which plaintiff doesn't challenge before this court is clearly erroneous. On the other issue, on plaintiff's second argument, which, again, we think is waived because it requires significant factual findings that the district court was never asked to make, but even if this court were to read it, Title VII provides that equitable remedies of reinstatement and back pay are provided for only when the termination or retaliation causes a loss of employment, and here that did not happen. The district court split the jury, found that discrimination didn't cause the termination, and the district court properly found that the termination was not retaliatory and instead was motivated by the fact that plaintiff had failed to submit a proper medical certification and had nonetheless taken leave, even though it was unauthorized, and that those events were the cause of her termination. So even if this court were to consider plaintiff's new argument on appeal, there's no need for a remand to the district court regarding the relevant factual findings it would need to make, because the point here is that the termination was not caused by discrimination or by retaliation. I see that my time is running out, so unless the court has further questions. Thank you very much. Thank you. Thanks to both of you for your arguments this morning, as well as for your briefing. The case just argued will be submitted, Lewis v. Donnelly, and we're adjourned for the morning. Thank you very much.
judges: Hawkins, McKeown, Bea